**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
DAVID SUSSMAN a/k/a MARK SUSSMAN, M.D.,   :
on behalf of himself and all others similarly situated,   :    **Case No.:** 12- CV-0181(ER)(LMS)
  :
                                 Plaintiff,   :
  :    **ORAL ARGUMENT REQUESTED**
        -against-   :
  :
I.C. SYSTEM, INC.,   :
  :
                        Defendant.   :
  :
----------------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW IN
### SUPPORT OF MOTION TO REARGUE

**KENNETH A. ELAN, ESQ.**
**217 Broadway, Suite 603**
**New York, NY 10007**
**(212) 619-0261**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.  The 1934 ACT AND THE LEGAL AUTHORITIES
    DEMONTRATE EXCLUSIVE FEDERAL REGULATION
    OF INTERSTATE TELECOMUNICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1.  The 1934 Act Precludes the States from
        the Interstate Regulation of Telecommunications . . . . . . . . . . . . . . . . . . . . 5

    2.  The Legal Authorities Make Clear that the States Have
        No Authority to Regulate Interstate Telecommunications . . . . . . . . . . . . . . . . . 6

B.  THE TCPA CREATED UNIFORM REGULATION OF
    THE USE OF AUTO-DIALERS IN INTERSTATE
    COMMERCE TO THE EXCLUSION OF THE STATES . . . . . . . . . . . . . . . . . . . . . 8

C.  GBL SECTION 399-P IS IN CONFLICT
    WITH THE FDCPA AND IS PREEMPTED . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Defendant I.C. System, Inc. ("IC") submits its Brief in support of its Motion to reargue or clarify the Court's denial of its Motion to dismiss Plaintiffs' assertion of a claim pursuant to NY General Business Law §399-p (the "GBL").   For the reasons set forth below, Defendant respectfully submits that the Court's decision was in material error and requests that the Court reconsider or clarify that ruling.

## PRELIMINARY STATEMENT

On March 6, 2013, the Court entered its Opinion and Order (the "Order") denying dismissal of Plaintiffs' GBL §399-p claim on the grounds that it was not preempted by federal law.[1]

In the Order, the Court held that GBL §399-p was not so preempted. A reexamination of that statute and the applicable federal law has uncovered additional material reasons why that decision was not correct and should be reconsidered:

1.      The federal Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, is an amendment to the Telecommunications Act of 1934, as amended (the "1934 Act"). The 1934 Act dominates the field of interstate telecommunications and mandates uniform rules for interstate telecommunications as directed principally by provisions of the 1934 Act and the powers given to the Federal Communications Commission (the "FCC"), which Commission was created by the 1934 Act.  As a result, the States generally have no power to legislate which legislation would hinder interstate telecommunications or to enact rules which conflict with the federal telecommunications scheme.  Federal regulation has dominated the field of telecommunications

---

[1]      A true copy of the Order is annexed hereto.

1

for over 80 years and its role has only expanded with the enactment of new and updated legislation.

2.    The TCPA was enacted in 1991 to plug the gap so to speak, in that the States did not have authority to legislate over the content of interstate telecommunications and address the then scourge of junk faxes and home telephone solicitations by interstate telemarketers. [2] Rather, Congress was asked to enact the TCPA to regulate the interstate use of automated dialers and the use of so-called "junk faxes," among other things.  Much of the authority under the TCPA was delegated to the FCC to promulgate regulations relating to the enforcement of the TCPA and the enactment of uniform standards.  As a result, the enactment of the TCPA left the States free to impose other requirements with respect to *intra-state* telecommunications. [3]

---

[2]    *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 341-42 (2d Cir. 2006):

> The Senate Report on the bill noted that state legislation prohibiting unsolicited telemarketing had "had limited effect ... because States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls." S.Rep. No. 102-178, at 3 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 1968, 1970. The report went on to state that "[f]ederal action is necessary because States do not have the jurisdiction to protect their citizens against those who use these machines to place interstate calls." *Id.* at 5, 1991 U.S.C.C.A.N. at 1973. Similarly, the Report of the House of Representatives indicated that "[m]any states have passed laws that seek to regulate telemarketing through various time, place and manner restrictions .... However, telemarketers can easily avoid the restrictions of State law, simply by locating their phone centers out of state." H.R.Rep. No. 102-317, at 9-1 (1991).

[3]    *Van Bergen v. State of Minn.*,59 F.3d 1541, 1548 (8th Cir. 1995) makes crystal clear that the enactment of the TCPA set a national standard for the regulation of the interstate use of automated dialers but left the states free to set their own rules on the intra-state use of such equipment, or to ban them entirely:

> The TCPA carries no implication that Congress intended to preempt state law; the statute includes a preemption provision expressly not preempting certain state laws. If Congress intended to preempt other state laws, that intent could easily have been expressed as part of the same provision. Further, the preemption provision makes it clear that Congress did not intend to "occupy the field" of ADAD regulation, *see Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or to

As will be demonstrated in further detail below, the Order fails to recognize the preemption over the content of interstate telecommunications rendered by the 1934 Act and the TCPA. While states are free to impose additional regulations on intrastate telecommunications, they are not allowed to set the standard for the rest of the nation. Indeed, had GBL §399-p banned the use of automated dialers, would that set the standard for the rest of the United States and, in effect, vitiate the TCPA? If GBL § 399-p has interstate applicability, why did Congress need to enact the TCPA at all? Giving GBL § 399-p interstate applicability would clearly be contrary to the legislative history of the TCPA. Further, given the extensive involvement of the Congress and the FCC as the designated regulators of interstate telecommunications, such ruling would be unprecedented. Absent recognition that the standards of the TCPA occupy the field with respect to interstate telecommunications, the careful balance established by Congress parceling out the regulation of certain intrastate telecommunications to the States would be materially damaged. Finally, as discussed below in point 3, either the requirements of GBL § 399-p directly conflict with federal law, or the statute was expressly designed to yield to the primacy of federal law. Either way GBL § 399-p does not state a claim and should be dismissed. Accordingly, the Order should be reconsidered or clarified. [4]

---

promote national uniformity of ADAD regulation, as it *expressly does not preempt state regulation of intrastate ADAD calls* that differs from federal regulation. The congressional findings appended to the TCPA state that "[o]ver half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operation; therefore, Federal law is needed to control residential telemarketing practices."

[4]    In deciding its Order, the Court chose not to consider Defendant's Motion for summary judgment nor the Declarations of fact previously submitted. Defendant maintains its office in St. Paul Minnesota and the telecommunications in question emanated from that location to Plaintiff's location in Monsey, NY. Should Plaintiff dispute this, a single deposition of Defendant, limited to the issue of the *situs* of the telecommunications at issue in this action, would quickly resolve any question that the calls in question were in interstate commerce and resolve the preemption in Defendant's favor.

3

3.    As decided in the Order, GBL §399-p may apply to interstate telecommunications.  Yet, if this is so, GBL §399-p expressly conflicts with the provisions of §805(b) (15 U.S.C. §1692c(b) of the Fair Debt Collection Practices Act (the "FDCPA")).  GBL §399-p states in relevant part:

> 3.    Whenever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall do all of the following:
>
>         (a)    state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the address, and telephone number of the person on whose behalf the message is transmitted, *provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law*;  (*Emphasis added.*)

While GBL § 399-p expressly requires the providing of the above information in the form of a voice mail message, §805(b) of the FDCPA prohibits it.  Indeed, it is a violation Section 805(b) of the FDCPA to communicate with any third party concerning a debtor's debt. Numerous cases hold that where a debt collector leaves a voice mail message which is heard by a person other than the debtor §805(b) is violated. The standard is one of strict liability.  Unless the debtor answers the telephone and identifies himself as such, the FDCPA mandates in effect, that the call be terminated without leaving a message.[5]  Since the FDCPA is a uniform federal statute, state or local law which creates a conflict must yield to the comprehensive federal regulation created by the FDCPA.  Indeed, both the FDCPA and GBL §399-p recognize the primacy of federal law. FDCPA §816 expressly preempts conflicting state law.   GBL §399-p(3)(a) exempts the disclosure requirements of the statute where they are prohibited or restricted by federal law. Thus, whether this is viewed as a preemption issue or as a statutory construction issue, GBL

---

[5]    *See Cordes v. Frederick J. Hanna & Associates, P.C.* 789 F.Supp.2d 1173, 1175-77 (D. Minn. 2011) (collecting cases).

§399-p does not state a claim and should be dismissed.  Defendant respectfully requests that the Court reconsider or clarify its Order and dismiss the GBL §399-p claim from the action.

## ARGUMENT

**A.    The 1934 ACT AND THE LEGAL AUTHORITIES DEMONTRATE EXCLUSIVE FEDERAL REGULATION OF INTERSTATE TELECOMUNICATIONS**

      **1.    The 1934 Act Precludes the States from the Interstate Regulation of Telecommunications**

The 1934 Act was passed by Congress to regulate interstate and foreign telecommunications. [6] A "common carrier" is any person engaged as a common carrier for hire, in *interstate or foreign communication* by wire or radio or in interstate or foreign radio transmission of energy.  The 1934 Act created the FCC and provided for its funding.  The 1934 Act provides for the regulation over common carriers engaged in interstate or foreign commerce, (§201, 47 U.S.C. §201).

Title II of the 1934 Act, imposes certain specific requirements on common carriers in their provision of telecommunications services.  Telephone service is clearly a "telecommunications service" (it transmits voice, unchanged, to a person at the other end of the line).

---

[6]      Section 2(b) of the 1934 Act ( 47 U.S.C. §152) provides in relevant part:

      (a) The provisions of this act shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided...

Federal regulation of telecommunications has increased since the passage of the 1934 Act. The 1996 amendments invalidated all local regulations which limited competition in telephone service and gave the FCC significant new powers.[7] The bottom line is that federal regulation of interstate telecommunications is the near exclusive providence of the federal government as exercised by statute and the actions of the FCC. States are prohibited from interfering in such interstate regulation, while they still possessed the power to regulate intra-state telecommunications, or as otherwise permitted by federal legislation and FCC regulation.

    2.    **The Legal Authorities Make Clear that the States Have**
                **<u>No Authority to Regulate Interstate Telecommunications</u>**

Numerous federal decisions give effect to the primacy of federal control over interstate telecommunications. *ATT Communications of Illinois, Inc. v. Illinois Bell Telephone Co.*, 349 F.3d 402, 410 (7th Cir. 2003)(Affirming district court injunction of state statute which attempted to legislate rates contrary to the procedures enacted by Congress); *City of Rome v. Verizon Communications Inc.*, 362 F.3d 168, 176 (2d Cir. 2004)(Recognition that Section 253 of the 1934 Act gives the FCC the power in invalidate state and local law which interferes with the competitive purposes of the 1996 amendments.); *Puerto Rican Telephone Co., Inc., v. Municipality of Guayanilla*, 450 F.3d 9, 23-24 (1st Cir. 2006)(Local charge of 5% on telephone companies for use of town facilities held preempted by 1934 Act).

The Second Circuit has repeatedly found preemption under the 1934 Act invalidating state and local regulation which conflicts with its provisions and purpose. In *TCG New York,*

---

[7]    The 1996 amendments to the 1934 Act declared invalid and thus preempted all state rules that restricted entry or limit competition in telephone service, both local and long-distance. It dismantled the AT&T and GTE antitrust consent decrees, including their controversial prohibitions on entry by the Bell Operating Companies ("BOCs") -- the so-called "Baby Bells" -- into the interLATA telephone market. (LATAs, or "Local Access and Transport Areas," are regional areas, similar to area codes, that divided the local and long-distance telephone markets under the AT&T consent decree.) *See* 47 U.S.C. §§253 and 271.

*Inc. v. City of White Plains*, 305 F.3d 67, 80-82 (2d Cir. 2002), the court held that regulations

enacted by the City of White Plains, New York were invalid as in conflict with §253 of the 1934

Act (47 U.S.C. §253), because the local law was not competitively neutral, among other

infirmities.

In *New York SMSA LP, v. Town of Clarkstown*, 612 F.3d 97, 100, 105*ff* (2d Cir. 2010),

the court upheld a decision of the district court invalidating a local law on the grounds of federal

preemption.  First, the court recognized at the outset, the substantial role which federal law has

played in the telecommunication field:

> **A.** *Federal Regulation of Telecommunications*
>     The field of telecommunications—the electronic transmission of sounds,
> words, and images, usually over a great distance—has long been the subject of
> federal regulation. In 1910, Congress passed the Wireless Ship Act of June 24,
> 1910, 36 Stat. 629, and the Radio Acts of 1912 and 1927 followed, 37 Stat. 302;
> 44 Stat. 1162. *See Nat'l Broad. Co. v. United States,* 319 U.S. 190, 210–13, 63
> S.Ct. 997, 87 L.Ed. 1344 (1943) (reviewing history of radio acts). In 1934,
> Congress passed the Communications Act of 1934, 48 Stat. 1064, and thereby
> created the Federal Communications Commission (the "FCC"). In doing so,
> Congress sought to create "a unified and comprehensive regulatory system for the
> industry," "to protect the national interest involved in the new and far-reaching
> science of broadcasting." *Nat'l Broad. Co.,* 319 U.S. at 213–14, 63 S.Ct. 997
> (quoting *FCC v. Pottsville Broad. Co.,* 309 U.S. 134, 137, 60 S.Ct. 437, 84 L.Ed.
> 656 (1940)). Congress gave the FCC the exclusive authority to grant licenses to
> telecommunications providers, *see* 47 U.S.C. § 151, and it "intended the FCC to
> possess exclusive authority over technical matters related to radio broadcasting,"
> *Freeman v. Burlington Broadcasters, Inc.,* 204 F.3d 311, 320 (2d Cir.2000).

In *SMSA* the court upheld an injunction preventing localities from impinging on the

province of the federal regulation of telecommunications, here wireless telephone service, by

interfering with the siting of cell towers and the technical requirements of cellular technology.

Finding field preemption, the court agreed that the local law must yield to uniform federal

regulation.

Thus, it is indisputable, that the 1934 Act clearly sets forth a strong presumption against

7

local regulation of interstate telecommunications, and even such local regulation which might affect interstate telecommunications.

**B.    THE TCPA CREATED UNIFORM REGULATION OF THE USE OF AUTO-DIALERS IN INTERSTATE COMMERCE TO THE EXCLUSION OF THE STATES**

As the authorities make clear, the TCPA was enacted by Congress to remedy a severe problem that States could not themselves regulate--the use of auto-dialers in interstate commerce since, such area had been preempted by federal law. [8] The TCPA was added to the 1934 Act as §227, as part of SubChapter II "Common Carriers", Part I "Common Carrier Regulation." Consistent with the 1934 Act's architecture, Congress saw fit to prevent the States from enacting laws which impinged on interstate commerce:

> **(e) Effect on State Law.--**
>
> (1) State law not preempted.--Except for the standards prescribed under subsection (d) and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more *restrictive intrastate requirements or regulations on, or which prohibits*—
>
> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>
> (B) the use of automatic telephone dialing systems;
>
> (C) the use of artificial or prerecorded voice messages; or
>
> (D) the making of telephone solicitations. *(Emphasis added.)*

Thus, consistent with 80 years of federal involvement in the regulation of interstate telecommunications, the TCPA prohibits the States from altering the uniform national scope of the regulation provided by the TCPA, but allows the States to impose more stringent regulations to intra-state activities, or ban the use of auto-dialers completely.  Indeed, if GBL §399-p had

---

[8]    *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 341-42 (2d Cir. 2006); *Van Bergen v. State of Minn.*,59 F.3d 1541, 1548 (8th Cir. 1995).

interstate effect, then the enactment of the TCPA would have been unnecessary. Rather, the States uniformly perceived that only a national law regulating interstate telecommunications with respect to the use of auto-dialers would provide the needed regulation, because the states did not have the legal right to regulate in this area.

The recent Supreme Court decision in *Mims v. Arrow Financial Services LLC*, ___ U.S. ___, 132 S.Ct 740, 744-745 (2012), makes this interpretation crystal clear:

> This case concerns enforcement, through private suits, of the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227. Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA. *Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls.* The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations. It authorizes States to bring civil actions to enjoin prohibited practices and to recover damages on their residents' behalf. The Commission must be notified of such suits and may intervene in them. Jurisdiction over state-initiated TCPA suits, Congress provided, lies exclusively in the U.S. district courts. Congress also provided for civil actions by private parties seeking redress for violations of the TCPA or of the Commission's implementing regulations. (*Emphasis added.*)

Thus, as discussed in *Mims*, the TCPA was passed to address the interstate use of auto-dialers.

Further, the Court also discussed the legislative history of the TCPA:

> In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Ibid.* (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy." *Ibid.* (internal quotation marks omitted). Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Ibid.* (internal quotation marks omitted). See also S.Rep. No. 102–178, p. 3 (1991), 1991 U.S.C.C.A.N. 1968, 1970 *("[B]ecause States do not have jurisdiction over interstate calls[,] [m]any States have expressed a*

*desire for Federal legislation....").* (*Emphasis added.*)

The text of the TCPA and the legal authorities support a conclusion that the TCPA preempts State regulation of interstate telecommunications which conflict with those of the TCPA, but affords the States powers with respect to intra-state telecommunications. Thus 47 U.S.C. §227(e) perfectly tracks such split in authority. Indeed, Congress could have preempted the field in its entirety and prevented the states from enacting any law on the subject, but chose not to. Thus, when §227(e) states that state law is not pre-empted, it must be recognized that Congress has decided not to preempt the whole field, but has allowed the states to regulate intra-state matters.

In *Patriotic Veterans, Inc., v. State of Indiana*, 821 F.Supp 2d 1074, 1077-1078 (S.D. Ind. 2011), the court held that an Indiana statute which regulated in interstate commerce the same matters as regulated by the TCPA  was prempted and enjoined its enforcement.[9]  In *Tel-tech*

---

[9]      Relying on the legislative history and the background of its passage, the court concluded that the TCPA was the exclusive source for the regulation of interstate use of auto-dialers:

> The TCPA does not contain an express preemption clause. Rather, it contains a savings clause that provides, in relevant part:
>
> [N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits ...
> (B) the use of automatic telephone dialing systems.[4]
>
> 47 U.S.C.A. § 227(f)(1). By defining in this way a universe of state laws that are *not* preempted, this provision, by implication, suggests that Congress intended for state laws outside of that defined universe to be preempted. This suggestion finds support in the legislative history of the TCPA. The Senate Report discussing the need for the legislation included the following statement:
>
> [O]ver 40 States have enacted legislation limiting the use of ADRMPs [automatic dialer recorded message players] or otherwise restricting unsolicited telemarketing. These measures have had limited effect, however, because States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls.
>
> S.Rep. No. 102-178 (1991), 1991 U.S.C.C.A.N. 1968, 1970; *see also id.* ("Federal action

*Systems Inc. v. Bryant*, 702 F.3d 232 (5th Cir. 2012), the Fifth Circuit held that the TCPA

preempted inconsistent state law. Similarly, in *Chamber of Commerce v. Locklyer*, 2006 WL

462482 (E.D. Cal. Feb. 27, 2006), the court invalidated a California state statute which conflicted

with the provisions of the TCPA.

Accordingly, GBL §399-p should be held pre-empted to the extent Plaintiff claims that it

regulates Defendant's interstate telecommunications activities.

### C.   GBL SECTION 399-P IS IN CONFLICT
####       WITH THE FDCPA AND IS PREEMPTED

The FDCPA was enacted by Congress to provide a uniform set of requirements and

prohibitions imposed on debt collectors to prevent harassing and unfair treatment of persons who

are claimed to owe a debt (§801; 15 U.S.C. §1601)  Sections 804 through 810 (15 U.S.C.

§§1692b *et seq.*) set forth the requirements and prohibits of the Act.  With respect to the instant

action §805(b) (15 U.S.C. 1692(c)(b)) is directly in point.  That statute states in part:

> is necessary because States do not have the jurisdiction to protect their citizens against
> those who use these machines to place interstate telephone calls."). Further, in enacting
> the TCPA, Congress made the following finding: "Over half the States now have statutes
> restricting various uses of the telephone for marketing, but telemarketers can evade their
> prohibitions through interstate operations; therefore, Federal law is needed to control
> residential telemarketing practices." PL 102–243 § 2(7), 105 Stat. 2394 (1991). Even
> more direct is the following comment by Senator Hollings, co-sponsor of the TCPA:
>
> > Section 227(e)(1) clarifies that the bill is not intended to preempt State authority
> > regarding intrastate communications except with respect to the technical standards
> > under section 227(d) and subject to section 227(e)(2). Pursuant to the general
> > preemptive effect of the Communications Act of 1934, State regulation of interstate
> > communications, including interstate communications initiated for telemarketing
> > purposes, is preempted.
>
> 137 Cong. Rec. S18781–02, S18784. As "a sponsor's statement to the full Senate," this
> statement "carries considerable weight" in determining whether Congress intended the
> TCPA to have preemptive effect with regard to interstate regulation. *See Corley v. United
> States,* 556 U.S. 303, 129 S.Ct. 1558, 1569, 173 L.Ed.2d 443.

11

> (b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

A violator of this provision is held strictly liable.

The legal authorities make clear that the leaving of a message from a debt collector on an answering machine, when heard by a person other than the debtor constitutes a violation of this provision. *Austin v. Great Lakes Collection Bureau*, 834 F.Supp. 557, 559 (D. Conn. 1993)(Debt collector's conversation with debtors secretary about the debt in question violated §805(b)); *Berg. v. Merchants Association Collection Division, Inc.,* 586 F.Supp. 2d 1336 (S.D. Fla. 2008)(Defendant's motion to dismiss denied where it left message on debtor's answering machine heard by others); *Cayson v. Rubin,* 751 F.Supp. 2d 491 (W.D.N.Y. 2010)(Jury verdict against plaintiff for §805(b) violations vacated and judgment n.o.v. granted plaintiff where debt-collector spoke to debtor's mother about plaintiff's debt); *Cordes v. Fredrick J. Hanna & Associates, P.C.*, 789 F.Supp. 2d 1183 (D. Minn. 2011)(Plaintiff debtor entitled to judgment on §805(b) claim where debt collector left voice mails concerning plaintiff's debt which were heard by boyfriend and other friend). Thus, a debt collector will violate §805(b) if it leaves a message on an answering machine, where the debtor has not personally answered the call.

GBL § 399-p imposes requirements that conflict with § 805(b). As set forth above (p. 3), the New York law imposes the obligation on a debt collector to leave in a voice mail the exact information which federal law prohibits. GBL §399-p has a savings clause which provides that it is *not applicable* where it conflicts with federal law. Since it does conflict with FDCPA §805(b), it must be held, by its own terms, to be a nullity in this action. Accordingly, Plaintiff's claim

12

based on GBL §399-p should be dismissed.

Section 816 of the FDCPA invalidates any state law which is inconsistent with the FDCPA. Since it is impossible to comply with both §805(b) and GBL 399-p, the state statute is preempted and the Court should amend its Order and dismiss the GBL claim. *See Sanchez v. Client Services, Inc.*, 520 F.Supp. 2d 1149, 1165 n.5 (N.D. Cal. 2007); *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 238 F.Supp.2d 1158, 1169-1170 (N.D. Cal. 2002). *See also, Gade v. National Solid Wastes Management Ass'n,* 505 U.S. 88, 98 (1992) [10]; *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-143, (1963); *Stanley v. Amalithone Realty, Inc.,* 94 A.D.3d 140 (1st Dep't. 2012).[11]

---

[10]    As the Court held in *Gade*:

Pre-emption may be either expressed or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983);*Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 152-153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is " 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' "*id.,* at 153, 102 S.Ct., at 3022 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)), *and conflict pre-emption, where "compliance with both federal and state regulations is a physical impossibility,"* *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-1218, 10 L.Ed.2d 248 (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *Felder v. Casey,* 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988); *Perez v. Campbell,* 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971). (Emphasis added.)

[11]   As the *Stanley* court held, where a state or local statute conflicts with federal law, the former must yield:

13

Finally, by its terms GBL 399-p claims to have no effect if it conflicts with other laws. Since defendant has established that GBL §399-p conflicts with federal law, GBL 399-p should be held to be preempted. Accordingly Plaintiff's claim based on GBL §399-p fails to state a cause of action and should be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should grant re-argument and should modify the Order and dismiss the GBL 399-p claim.

Dated: March 20, 2013

*Respectfully submitted,*

By: /s/ Kenneth A. Elan

**KENNETH A. ELAN, ESQ.** (A Member
of the Bar of this Court)
217 Broadway, Suite 603
New York, New York 10007
(212) 619-0261
*Attorney for Defendant I.C. System, Inc.*

---

We next address whether the narrowest ground for preemption—conflict preemption—is sufficient to preempt the plaintiffs' claims. To the extent that a law or regulation of this state conflicts with the TCA of 1996 or any of the FCC's valid regulations under that statute, it is preempted and has no effect (*see Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 699, 104 S.Ct. 2694, 81 L.Ed.2d 580 [1984], citing *Fidelity Federal Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 153–154, 102 S.Ct. 3014, 73 L.Ed.2d 664 [1982] ). A conflict between state and federal law arises "when it is impossible for a private party to comply with both state and federal law or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*PLIVA, Inc. v. Mensing,* 564 U.S. ——, 131 S.Ct. 2567, 2587 [internal quotation marks and citation omitted] ). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects" (*Crosby v. National Foreign Trade Council,* 530 U.S. 363, 373, 120 S.Ct. 2288, 147 L.Ed.2d 352 [2000] ). Here, we find that such a conflict exists.

14