UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SUSSMAN a/k/a MARK SUSSMAN, M.D. SUSSMAN individually and on behalf of all others similarly situated,

Plaintiff,

- against -

I.C. SYSTEM, INC.,

Defendant.

**OPINION AND ORDER**
12-CV-0181 (ER)

Ramos, D.J.:

Plaintiff David Sussman ("Sussman") commenced this action against Defendant I.C. System, Inc. ("Defendant" or "I.C.") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA" or the "Act") and Section 399-p of the New York General Business Law ("GBL"). Doc. 1 ("Compl.") ¶¶ 39-48. Before the Court is I.C.'s Motion to Dismiss the Complaint for failure to state a claim.[1] Doc. 19. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

[1] Defendant's moving papers indicate that it moves to dismiss "and/or" for summary judgment pursuant to Rules 12(b)(6) and 56. (Def.'s Mem. L. at 5.) In support of its motion, Defendant submits the affidavit of Ryan Bacon, which includes accompanying exhibits. Doc. 21. Plaintiff filed a response to Defendant's statement of material facts pursuant to Local Rule 56.1, but objected to Defendant's motion for summary judgment, arguing that summary judgment is "entirely inappropriate prior to discovery" and that Defendant's motion "violates this Court's order." (Pl.'s 56.1 Stmt. at 1 n.1.) Although Defendant moves to dismiss pursuant to Rule 12(b)(6), because the pleadings are closed, the Court will treat Defendant's motion to dismiss as one for judgment on the pleadings pursuant to Rule 12(c). Under Rule 12(c), the court may consider, "'in its discretion and upon notice to all parties,'" materials outside the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988) (quoting *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53 (2d Cir. 1985)). If it does so, however, the motion is treated as one for summary judgment under Rule 56. *Id.* The Court declines to exercise its discretion here. As Plaintiff argues, discovery has been stayed pending the Court's decision on Defendant's dispositive motion. *See* Minute Entry, dated April 10, 2012. There would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered. Additionally, the Court notes that at the pretrial motion conference, Defendant was granted leave to file a motion to dismiss, not a motion for summary judgment. *Id.*

## I. Factual Background

Plaintiff is a New York citizen residing in Monsey, New York. (Compl. ¶ 9.) Defendant is a collection agency with its principal place of business in Minnesota. (*Id.* ¶ 11.) Plaintiff alleges that from on or about October 1, 2011 to the date of the filing of the Complaint, January 10, 2012, in an attempt to collect a debt for home telephone bills which Plaintiff did not owe, Defendant placed over 50 calls to Plaintiff's residential telephone lines without Plaintiff's consent. (*Id.* ¶ 19.) Defendant placed these calls using an automatic dialing-announcing device. (*Id.*) The calls terminated either prior to or as soon as Plaintiff, members of Plaintiff's household, or Plaintiff's voice mail answered the call. (*Id.*) In these calls, Defendant failed to identify the name of the person making the call, the person on whose behalf the calls were being made, or the address and telephone number of the person on whose behalf the calls were being made. (*Id.* ¶ 20.) Plaintiff alleges that nothing in federal, state or local law prohibited the Defendant form making such disclosures. (*Id.*) On or about November 4, 2011, Plaintiff informed Defendant in writing that he did not owe anything and instructed Defendant to stop harassing him. (*Id.* ¶ 21.) Plaintiff alleges that Defendant continued to make calls to Plaintiff's residential telephone lines even after Plaintiff instructed Defendant to stop harassing him. (*Id.*)

Plaintiff further alleges that from three years prior to the date of the filing of the Complaint to January 10, 2012, Defendant used the automatic dialing-announcing device to place over 100,000 calls to thousands of persons in New York. (*Id.* ¶ 22.) In these calls, Defendant hung up either prior to or after the phone was picked up by a person or answering device, and otherwise did not identify the address of the persons on whose behalf the calls were being made. (*Id.*)

**II. Legal Standard for a Motion for Judgment on the Pleadings**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, a plaintiff is required to support its claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**III. Plaintiff's New York Law Claim is Not Preempted by the TCPA**

Plaintiff alleges that Defendant's calls violated New York GBL § 399-p, which requires that any person using an automatic dialing-announcing device state at the beginning of the call

Case 7:12-cv-00181-ER Document 32 Filed 03/06/13 Page 4 of 20

the nature of the call and the name, address and telephone number of the person on whose behalf the message is being transmitted. N.Y.G.B.L. § 399-p(3). Defendant argues that GBL § 399-p is preempted by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, insofar as GBL § 399-p applies to calls made from outside New York, as Defendant contends the calls in this case were. (Def.'s Mem. L. at 9.)

Federal law can preempt state law if Congress expresses its intent to preempt the law through explicit statutory language or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption") or if state law directly conflicts with federal law ("conflict preemption"). *See N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *Green Mountain R.R. Corp. v. Vermont,* 404 F.3d 638, 641 (2d Cir. 2005). The key factor in determining whether a state law has been preempted is the intent of Congress. *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted). The determination that a state law is preempted under the field or conflict preemption theories is generally based on the implied manifestations of congressional intent. *Id.*

**a. Presumption Against Preemption**

Courts addressing claims of preemption start from the presumption that Congress does not intend to supplant state law. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012). Accordingly, the legislative exercise of the "historic police powers of the State" is not to be superseded by a federal statute unless it was "the clear and manifest purpose of Congress" to do so. *N.Y. SMSA Ltd. P'ship*, 612 F.3d at 104 (citing *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)). However, the presumption is generally not

applied when a state regulates in an area "where there has been a history of significant federal presence." *Id.* (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)).

Defendant argues that the Court should not apply the presumption against preemption here because telecommunications is an area that has long had a "federal presence." (Def.'s Mem. L. at 16.) However, the Supreme Court held in *Wyeth* that "[t]he presumption [against preemption] . . . accounts for the historic presence of state law but *does not rely on the absence of federal regulation*." *Wyeth*, 555 U.S. at 565 n.3 (emphasis added). Thus, the fact that Congress has regulated telemarketing practices, including through the enactment of the TCPA, does not, in itself, provide a basis for not applying the presumption against preemption.

The Court finds that the intention of Congress in enacting the TCPA was not to preempt state laws, but rather to regulate the telecommunications industry concurrently with the states, which "have a long history of regulating telemarketing practices." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 18 F.C.C.R. 14014, 14060-62 (2003) (noting that "states have historically enforced their own state statutes within, as well as across state lines"). As the Second Circuit has held, "[t]he legislative history indicates that Congress intended the TCPA to provide 'interstitial law preventing evasion of state law by calling across state lines.' Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir. 2006) (citation omitted). Accordingly, the Court applies the presumption against preemption here.

**b. No Express Preemption in the TCPA**

Subsection (f) of the TCPA is the only provision in the statute which speaks to the issue of preemption. It states:

Case 7:12-cv-00181-ER Document 32 Filed 03/06/13 Page 6 of 20

> (f) Effect on State law. (1) State law not preempted. Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits: (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements; (B) the use of automatic telephone dialing systems; (C) the use of artificial or prerecorded voice messages; or (D) the making of telephone solicitations.

47 U.S.C. § 227(f)(1). Although Defendant concedes that § 399-p is not expressly preempted by the TCPA, it makes two arguments in favor of preemption. First, Defendant argues that because GBL § 399-p attempts to impose more restrictive requirements on interstate calls into New York than are imposed by the TCPA, it is preempted.[2] (Def.'s Mem. L. at 16.) Second, it argues that because subsection (f) "saves" particular state actions, then any claims not specifically "saved" should therefore be assumed to be preempted. (Def.'s Mem. L. at 11; Def.'s Reply Mem. L. at 3, 5.)

The Court finds that nothing in the savings clause, nor any other provision in the TCPA, expressly preempts a state law such as § 399-p that regulates interstate communications. Moreover that the TCPA "saves" certain state laws does not suggest, by negative implication,

---

[2] The TCPA prohibits the use of "automatic telephone dialing systems" unless the call is exempted by the FCC. 47 U.S.C § 227(b)(1)(B). The FCC exempts from the TCPA's statutory prohibition against prerecorded calls any call "made to any person with whom the caller has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iv). Additionally, the FCC exempts any call "made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation." 47 C.F.R. § 64.1200(a)(2)(iii). The FCC has held that these two exemptions "apply where a third party places a debt collection call on behalf of the company holding the debt." *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (quoting *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8773, ¶ 39 (July 26, 1995)). The FCC has also made clear that "all debt collection circumstances involve a prior or existing business relationship." *Id.* (quoting *In the Matter of Rules and Regulations*, 7 FCC Rcd. at 8771-72, ¶ 36). Accordingly, the calls at issue here are exempted from the TCPA's prohibition on the use of automatic dialing systems. Defendant appears to argue that GBL § 399-p imposes more restrictive requirements on interstate calls because, unlike the TCPA, debt collection calls are not exempted from the requirements imposed.

that other state laws not specifically "saved" by subsection (f) are preempted by the federal law. In *Drake v. Laboratory Corp. of Am. Holdings*, 458 F.3d 48 (2d Cir. 2006), the Second Circuit rejected the argument that the savings clause of the Federal Aviation Act, which provides that some state criminal statutes are not preempted, implies that state civil law claims are otherwise "broadly preempted." *Id.* at 62. The Court held that, in light of "persuasive evidence" that the federal regulations were not intended to preempt civil claims, the savings clause does not "carr[y] a negative pregnant that other state law is preempted." *Id.* (quoting *Ishikawa v. Delta Airlines Inc.*, 343 F.3d 1129, 1132 (9th Cir. 2003) (noting that the preemption by negative inference argument would likely fail "because of the presumption against preemption")).

Similarly, here, the legislative history indicates that Congress did not intend to preempt state law through the passage of the TCPA. To the contrary, "[t]he legislative history indicates that Congress intended the TCPA to provide 'interstitial law preventing evasion of state law by [debt collectors and telemarketers] calling across state lines.'" *Gottlieb*, 436 F.3d at 342 (quoting *Van Bergen v. Minnesota*, 59 F.3d 1541, 1548 (8th Cir. 1995)). Congress therefore "sought to put the TCPA on the same footing as state law." *Id.* Moreover, the TCPA includes a provision expressly not preempting certain state laws; had Congress intended to preempt other state laws, "that intent could easily have been expressed as part of the [savings clause]." *Van Bergen*, 59 F.3d at 1548. Accordingly, absent any evidence that "the clear and manifest purpose of Congress" in enacting the TCPA was to exclusively regulate the field of telecommunications, the Court finds that GBL § 399-p is not expressly preempted.

**c. Congress did not Impliedly Preempt GBL § 399-p**

In the absence of express statutory language, state law is preempted "where Congress has manifested an intent to 'occupy the field' in a certain area," or where the state law actually

Case 7:12-cv-00181-ER Document 32 Filed 03/06/13 Page 8 of 20

conflicts with the federal law. *Niagara Mohawk Power Corp.*, 673 F.3d at 95 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)). There is no reason to suggest, and Defendant has not provided the Court with one, that it would be impossible for a party to comply with both the TCPA and § 399-p, and § 399-p does not stand as an obstacle to the accomplishment of Congress's objectives and purposes. Rather, the Court finds that both the text and the legislative history of the TCPA suggest that Congress intended to set a uniform minimum while permitting the states, who have an obvious interest in protecting their citizens and are better able to understand their needs, to enact more restrictive regulations if necessary. Accordingly, the Court finds that there is no conflict preemption in this case.

With respect to field preemption, for the reasons discussed above, the Court finds that Congress did not intend to supplant state law, but rather, to provide interstitial law preventing evasion of state law by parties making interstate calls. *See Gottlieb*, 436 F.3d at 342; *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998) (holding that the TCPA "does not reflect an attempt by Congress to occupy this field of interstate communication"), *overruled on other grounds by Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012); *Van Bergen*, 59 F.3d at 1548. To the contrary, Congress went to some lengths to protect the states' power to regulate in this field. *See, e.g.*, 47 U.S.C. §§ 227(f) (savings clause); (g)(6) (preserving states' right to proceed in state courts for violations of state civil or criminal statutes); § 414 ("Nothing in this chapter . . . shall . . . abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are *in addition* to such remedies.") (emphasis added). Accordingly, as Congress has not manifested a clear intent to occupy the field of telecommunications, §399-p is not preempted under the theory of field preemption.

Although Defendant concedes that preemption does not "fall[] within [any] of the three established criteria set out in *Niagara Mohawk*," Def.'s Reply Mem. L. at 5, it argues that these three tests for preemption are not the exclusive tools for determining Congress's intent in enacting the TCPA. In support of this argument, Defendant points to Congress's apparent belief in passing the TCPA that because states do not have jurisdiction over interstate calls, a federal law was needed to regulate interstate communications. (Def.'s Mem. L. at 11.)[3] Defendant admits, however, that Congress's belief regarding states' jurisdiction over interstate calls has "since found to be in error." *Id.* Indeed, the Second Circuit questioned the merit of Congress's belief in *Gottlieb* when stating that "although federal legislators apparently believed that states do not have jurisdiction over interstate calls, it is also *possible* that federal courts would have diversity jurisdiction over state-law claims involving interstate calls and parties of diverse citizenship." *Gottlieb*, 436 F.3d at 342 n.9 (emphasis in original). The Court held that it was aware of "no reasoned legal analysis supporting the belief expressed in the congressional reports that state laws could not reach . . . interstate advertisements."[4] *Id.*

---

[3] In support of its argument for field preemption, Defendant also points to the statements of the TCPA's co-sponsor, Senator Hollings, who stated that "[p]ursuant to the general preemptive effect of the Communications Act of 1934, State regulation of interstate communications, including interstate communications initiated for telemarketing purposes, is preempted." (Def.'s Mem. L. at 11.) However, the Supreme Court has recently held, in a decision addressing a statement made by Senator Hollings in support of the TCPA, that "the views of a single legislator, even a bill's sponsor, are not controlling." *Mims*, 132 S. Ct. at 752. Accordingly, Senator Hollings' comments do not control this Court's decision.

[4] Because Defendant has failed to satisfy the Court that § 399-p is preempted under any of the three types of preemption outlined by the Supreme Court, the Court need not address Plaintiff's argument that his claim is expressly "saved" under Section 227(f)(1)(B) of the TCPA. 47 U.S.C. § 227(f)(1)(B) ("[N]othing in this section . . . shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits . . . the use of automatic telephone dialing systems."); *see also* Pl.'s Mem. L. at 19.

Having found that Congress did not expressly or impliedly preempt state law through the enactment of the TCPA, the Court denies Defendant's motion to dismiss Plaintiff's New York claim on that ground.[5]

**IV. Plaintiff's FDCPA Claims**

Defendant argues that Plaintiff has failed to state a claim under the FDCPA. (Def.'s Mem. L. at 17.) In arguing for dismissal, Defendant relies heavily upon extrinsic evidence, including the affidavit of Ryan Bacon and the exhibits attached thereto. However, for the reasons discussed above, the Court declines to consider matters outside the pleadings in ruling on the instant motion. *See supra* note 1, at 1.

**a. The Complaint States a Claim Under 15 U.S.C. § 1692c(c)**

Section 1692c(c) of the FDCPA provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c). The statute further provides that if such notification is made by mail, the notification "shall be complete upon receipt." *Id.* Here, Plaintiff alleges that on or about November 4, 2011, he informed Defendant

[5] The Court also notes that Defendant's motion for dismissal on the basis of preemption relies upon certain facts which are not apparent from the face of the Complaint. For example, Defendant argues that because GBL § 399-p imposes more restrictive requirements on *interstate calls* into New York than are imposed by the TCPA, Plaintiff's claim is preempted by that federal act. (Def.'s Mem. L. at 16.) Defendant's argument therefore relies on the assumption that the calls at issue here were interstate. However, although Plaintiff, a New York resident, alleges that Defendant is a Minnesota corporation, he does not allege that the calls placed to Plaintiff's residential telephone lines were initiated in Minnesota. (Compl. ¶¶ 9, 11, 19-23.) Defendant has submitted extrinsic evidence suggesting that the calls at issue were made from Minnesota, Def.'s Mem. L. at 6 n.7, however, on a motion for judgment on the pleadings pursuant to Rule 12(c), the Court declines to consider materials outside the pleadings. *See supra* note 1. Accordingly, although the Court finds that New York's regulation on interstate automated calls is not preempted by the TCPA, even if the Court had found in favor of preemption, Defendant's motion would still fail, as Plaintiff has not alleged that the calls at issue here were interstate.

in writing that he did not owe any debt and instructed Defendant to stop harassing him. (Compl. ¶ 21.) Plaintiff further claims that Defendant continued to call him until January 10, 2012. (*Id.* ¶¶ 19, 21.) Accordingly, Plaintiff has sufficiently stated a claim under § 1692c(c).

Defendant argues that Plaintiff's claim is barred by the "bona fide error defense," which provides that "[a] debt collector may not be held liable in any action . . . if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Defendant supports its bona fide error defense by pointing to extrinsic evidence that Plaintiff's dispute of the debt was entered into Defendant's "ICE-System" on the morning of November 23, 2011. (Def.'s Mem. L. at 20.) Defendant argues that the ICE-System is not linked to the Automatic Dialer System and that information from the ICE-System is transmitted overnight to the dialer system. (*Id.*) Defendant states that it is entitled to the bona fide error defense because its records indicate that the last three phone calls made to Plaintiff were all made after receipt and entry of Plaintiff's letter on the morning of November 23, 2011, and that no more calls were made to Plaintiff after that date. (*Id.*) On a motion for judgment on the pleadings, however, the Court will not consider extrinsic evidence. Moreover, even if the Court were to consider the materials submitted by Defendant, Plaintiff correctly argues that an issue of fact exists regarding whether the one-day lag built into Defendant's system qualifies as a bona fide error. *See Bank v. Cooper*, No. 08 Civ. 3936 (JBW), 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) (noting that whether the violation resulted from a bona fide error is an issue of fact), *aff'd*, 356 F. App'x 509 (2d Cir. 2009); *see also* Pl.'s Mem. L. at 22.

**b. The Complaint States a Claim Under 15 U.S.C. § 1692d(5)**

Section 1692d of the FDCPA provides that a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The provision provides a non-exhaustive list of conduct that would violate the statute, including "[c]ausing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass." *Id.* § 1692d(5). To state a claim under § 1692d(5), Plaintiff is only required to plead enough facts to show that it is plausible that IC caused his telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass. Here, Plaintiff has alleged receiving over 50 calls from IC over an approximately three month period, all allegedly relating to the collection of a debt that Plaintiff did not owe. (Compl. ¶ 19.) Plaintiff further alleges that these phone calls persisted even after Plaintiff informed IC in writing that he did not owe any debt and instructed Defendant to stop harassing him. (*Id.* ¶ 21.) Additionally, Plaintiff alleges that Defendant hung up either prior to or as soon as Plaintiff or a member of his family answered the call. (*Id.* ¶ 19.) Defendant's alleged conduct plausibly has "the natural consequence of . . . harass[ing], oppress[ing], or abus[ing]" the recipient of the calls. *See Doyle v. Midland Credit Mgmt., Inc.*, No. 11 Civ. 5571 (JG) (MDG), 2012 WL 1666397, at *4 (E.D.N.Y. May 11, 2012) (denying motion to dismiss where plaintiff alleged receiving 22 to 28 phone calls from defendant relating to a debt not owed by plaintiff and where the calls persisted even after plaintiff directed defendant not to call again); *see also Carr v. NCO Fin. Sys., Inc.*, No. 11-2050 (GEKP), 2011 WL 6371899, at *2 (E.D. Pa. Dec. 20, 2011) (noting that courts have found that a high volume of calls alone may be sufficient to state a plausible claim under § 1692d(5) and citing cases).

Defendant argues that Plaintiff cannot state a claim because IC's "unanswered" calls to Plaintiff were "made during reasonable hours and times." (Def.'s Mem. L. at 19.) Defendant's argument that the calls at issue were made during reasonable hours is based upon extrinsic evidence not included in or integral to the Complaint, and which will therefore not be considered by the Court. Additionally, the Court notes that Defendant's assertion that IC's calls were all "unanswered" is contradicted by the allegations in the Complaint. Plaintiff alleges that Defendant hung up "either prior to or as soon as Plaintiff, members of Plaintiff's household or Plaintiff's voice mail answered the call." (Compl. ¶ 19.) Plaintiff therefore alleges that at least some of the more than 50 phone calls were "answered" by Plaintiff or a member of Plaintiff's household.

In support of its motion, Defendant relies heavily on a recent Eastern District of New York case, *Chavious v. CBE Group, Inc.*, 10 Civ. 1293 (JS) (ARL), 2012 WL 113509 (E.D.N.Y. Jan. 30, 2012). However, *Chavious* was decided at the summary judgment stage, after the factual record of the case had been established. Moreover, the facts at issue in *Chavious* are distinguishable from those here. Specifically, the *Chavious* court determined that the plaintiff did not establish a triable issue of fact where: (i) the calls were all made at reasonable times and not one immediately following another, (ii) no one answered the calls, and (iii) the plaintiff never asked the defendant to stop calling. *Id.* at *2-*3. Here, on the other hand, Plaintiff alleges that he or a member of his household answered the calls on at least one occasion and that Plaintiff requested that Defendant stop harassing him. (Compl. ¶¶ 19, 21.) Moreover, although Defendant suggests that Plaintiff "implicitly concedes that none of the calls were made back to back or at unusual times of the day or night," Def.'s Reply Mem. L. at 9, the Court disagrees and

finds that no such implicit admission is discernible from either the face of the Complaint or Plaintiff's opposition papers.

**c. The Complaint States a Claim Under 15 U.S.C. § 1692d(6)**

Section 1692d(6) prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Here, Plaintiff alleges that Defendant "hung up either prior to or as soon as Plaintiff, members of Plaintiff's household or Plaintiff's voice mail answered the call." (Compl. ¶ 19.) Accordingly, if, as Plaintiff claims, Defendant called Plaintiff and hung up the phone, common sense dictates that Defendant did not provide "meaningful disclosure of [its] identity," as required by § 1692d(6). *See Langdon v. Credit Mgmt., L.P.*, No. 09-3286 (VRW), 2010 WL 3341860, at *2 (N.D. Cal. Feb. 24, 2010); *c.f. Fashakin v. Nextel Comms.*, No. 05 Civ. 3080 (RRM), 2009 WL 790350, at *7 (E.D.N.Y. Mar. 25, 2009) ("Courts have held that the meaningful disclosure required by § 1692d(6) has been made 'if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name.'"). Plaintiff therefore sufficiently pleads a claim under § 1692d(6).[6]

**d. The Complaint Does Not State a Claim Under 15 U.S.C. §§ 1692e(2)(A) or e(10)**

Section 1692e of the FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and provides a non-exhaustive list of example violations. 15 U.S.C. § 1692e. In particular, Plaintiff alleges that

[6] In support of his motion, Defendant points to case law holding that a debt collector's failure to leave a voicemail message, without more, does not amount to a § 1692d(6) violation. (Def.'s Mem. L. at 19-20) (citing *Chavious*, 2012 WL 113509, at *3). As discussed above, in *Chavious*, plaintiff did not pick up the calls at issue and the defendant never left a voicemail message. *Id.* at *1. Here, on the other hand, Plaintiff alleges that he or a member of his household answered Defendant's calls. Thus, the cases and legal proposition cited by Defendant do not compel a different outcome.

Defendant violated §§ 1692e(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt," and 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect . . . any debt."

Courts in the Second Circuit evaluate claims under the FDCPA according to how the "least sophisticated consumer" would understand the communication. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). Additionally, several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive or misleading practices in the collection of a debt. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, No. 12-985-cv, 2012 WL 5908601, at *3 (2d Cir. Nov. 27, 2012) (citing cases). Thus, in determining whether a plaintiff has stated a claim under § 1692e of the FDCPA, courts have considered whether the false representations "rest on material misrepresentations." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012); *see also Lane v. Fein, Such & Crane LLP*, 767 F. Supp. 2d 382, 389-90 (E.D.N.Y. 2011) (holding that misstatement in state court complaint was not materially false or misleading under the FDCPA); *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 11 Civ. 1111 (SRU), 2012 WL 4372251, at *3-*4 (D. Conn. Sept. 24, 2012) (adopting materiality requirement). Case law in this Circuit "demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." *Gabriele*, 2012 WL 5908601, at *4. For example, the Second Circuit has held that a debt collector could be liable under the FDCPA for a false statement that a borrower's debt was ineligible for bankruptcy, and for falsely representing that the collector had the authority to initiate legal proceedings against the debtor. *Id.* (citing *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233-34 (2d Cir. 2012), *Bentley v. Great*

*Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993)). Additionally, the Second Circuit has held that debt collection practices that are "contradictory, vague, or threatening create FDCPA liability." *Id.* (citation omitted).

Here, Plaintiff alleges that Defendant "hung up either prior to or as soon as" Plaintiff, a member of his household, or his voicemail answered the call. (Compl. ¶ 19.) It is therefore not plausible that Defendant made *any* "false representations," let alone *material* misrepresentations, regarding the "character, amount, or legal status of the debt" or in an effort to collect the debt. Moreover, Plaintiff's argument that § 1692e(2)(A) "imposes strict liability" and includes an "unintentional misrepresentation of an amount of debt" is irrelevant because he has failed to allege that *any* representation—correct or not—was conveyed by Defendant. (Pl.'s Mem. L. at 28.) Accordingly, the Court finds that Plaintiff fails to state a claim under §§ 1692e(2)(A) and e(10).

**e. The Complaint States a Claim Under 15 U.S.C. § 1692e(11)**

Plaintiff alleges that Defendant violated § 1692e(11), which prohibits the failure to disclose in the "initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" and in "subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11). The FDCPA defines the term "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Here, Plaintiff alleges that Defendant hung up either prior to or as soon as the phone was answered. (Compl. ¶ 19.) However, Plaintiff cites case law holding that factual allegations that a defendant calls plaintiff and hangs up "provides sufficient factual support" for a claim under § 1692e(11). (Pl.'s Mem. L. at 28) (citing *Langdon*, 2010 WL 3341860, at *3).

No court within the Second Circuit appears to have answered the question of whether a "communication" occurs where defendant initiates a call and then hangs up "either prior to or as soon as" the call is answered by plaintiff. However, in *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006), the court considered whether a pre-recorded voicemail message that did not disclose specific information about the particular debt being collected was a "communication" under the FDCPA. The court's reasoning is instructive. First, the court clarified that "consistent with Congress's intent in enacting the FDCPA, the statute [including the definition of 'communication'] should be broadly construed." *Id.* at 655 (citations omitted). Second, the court noted that there was "no question that the call related to the collection of a debt" because the message indicated that the call was from "NCO Financial Systems" and anyone familiar with NCO Financial Systems would know that it is a debt collector and that the call was therefore about a debt. *Id.* at 658. Finally, the *Foti* court emphasized the fact that "the obvious purpose of the message was to provide the debtor with enough information to entice a return call." *Id.* at 656. The *Foti* court found that the debt collector provided enough information to "entice" a return call by providing its name and return telephone number, and stating that the matter required immediate attention. *Id.*

The situation here, of course, is different. Plaintiff does not allege how he knew that I.C. was a debt collector, nor does he indicate how he identified Defendant.[7] However, he does allege that I.C. is a debt collector and that he wrote I.C. and informed it that he did not owe a debt and instructed it to stop harassing him. Thus, Plaintiff has alleged enough facts to draw the reasonable inference that the calls at issue provided Plaintiff with sufficient information to learn

[7] Logically, one would assume either that (i) Plaintiff had at least one conversation with Defendant in which Defendant identified itself as a debt collector, or (ii) Plaintiff was somehow able to identify Defendant from its return telephone number. However, no such allegations are made.

the name or address of the caller, which allowed him to deduce the nature of the call. Additionally, by calling over 50 times within an approximately three month period, it is reasonable to infer that Plaintiff believed that Defendant wanted his immediate attention.

The *Foti* court also based its decision on the concern that a more narrow reading of the term "communication" would "create a significant loophole in the FDCPA, allowing debtors to circumvent . . . provisions of the FDCPA that have a threshold 'communication' requirement." *Id.* at 657. To interpret the FDCPA as not covering calls that are disconnected prior to or as soon as the receiving party picks up the phone would permit debt collectors to escape liability by calling consumers however often they wish and simply hanging up as soon as the consumer answers the phone. "Such a reading is inconsistent with Congress's intent to protect consumers from 'serious and widespread' debt collection abuses." *Id.* at 657-58.

Thus, applying the reasoning used by the *Foti* court and accepting as true all factual allegations and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the calls at issue constitute "communications" under the FDCPA. *See Cerrato v. Solomon & Solomon*, No. 11 Civ. 623 (JCH), 2012 WL 6621339, at *4-*6 (D. Conn. Dec. 18, 2012) (applying the *Foti* court's reasoning and holding that unanswered or missed telephone calls constitute "communications" under the FDCPA). Accordingly, because Plaintiff alleges that Defendant did not disclose that it was a debt collector and that it was attempting to collect a debt, Plaintiff has stated a plausible claim under § 1692e(11).

**f. The Complaint Does Not State a Claim Under 15 U.S.C. § 1692f**

Section 1692f of the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The statute lists eight non-exhaustive examples of § 1692f violations. However, "conduct that may be

deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1) through (8)." *Foti*, 424 F. Supp. 2d at 667 (citation and internal quotation marks omitted). Rather, § 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff does not allege any "unfair or unconscionable" acts listed within subsections (1) through (8) of § 1692f, however, this alone is not fatal to Plaintiff's claim because § 1692f permits courts to sanction improper conduct that is not specifically addressed in the FDCPA. However, Plaintiff's Complaint is deficient because his allegations fail to "identify any misconduct beyond that which Plaintiff[] assert[s] violate[s] other provisions of the FDCPA." *Id.* (citing *Tsenes v. Trans-Cont'l Credit & Collection Corp.*, 892 F. Supp. 461, 466 (E.D.N.Y. 1995) (holding that plaintiffs failed to state a claim under § 1692f where "the Complaint is devoid of support for the contention that the defendant engaged in practices that were 'unfair' or 'unconscionable' within the meaning of . . . section [1692f]" because "all the allegations in the Complaint support claims asserted under either §§ 1692g or 1692e")). Moreover, the Court finds that the facts alleged by Plaintiff do not rise to the level of "unfair or unconscionable" acts. Accordingly, Plaintiff has failed to state a claim under § 1692f, and Defendant's motion is granted to that extent.

**V. Conclusion**

For the reasons set forth above, Defendant's motion to dismiss is DENIED with respect to Plaintiff's claims pursuant to New York GBL § 399-p and 15 U.S.C. §§ 1692c(c), d(5), d(6), and e(11), and GRANTED with respect to Plaintiff's claims pursuant to 15 U.S.C. §§ 1692 e(2)(A), e(10), and f. Accordingly, the only claims that remain in this case are Plaintiff's claims pursuant to New York GBL § 399-p (failure to identify the person on whose behalf the call is

being made and the nature of the call), and Sections 1692c(c) (failure to cease communication after being notified in writing that consumer wishes the debt collector to cease further communication), d(5) (repeatedly calling a consumer "with intent to annoy, abuse, or harass"), d(6) (failure to provide "meaningful disclosure of the caller's identity"), and e(11) (failure to disclose that the communication is from a debt collector who is attempting to collect a debt) of the FDCPA. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 19.

The parties are to appear for a pre-trial conference on April 4, 2013, at 10:00 a.m.

It is SO ORDERED.

Dated: March 6, 2013
White Plains, New York

Edgardo Ramos, U.S.D.J.